IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENNETH ALEXANDER ROSS,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

OPINION AND ORDER

18-cv-430-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Kenneth Ross is seeking review of a final decision by defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying his claim for disability insurance benefits under the Social Security Act and finding him capable of limited light level work. 42 U.S.C. § 405(g). Plaintiff seeks remand of that decision, contending that the administrative law judge who decided the case did not give adequate reasons for rejecting the opinions of plaintiff's treating physician and failed to consider his borderline age category when applying the agency's Medical Vocational Guidelines. For the reasons explained below, I am remanding this case for further consideration of plaintiff's borderline age category. On remand, the administrative law judge also should take care to consider all of the limitations assessed by plaintiff's treating physician, including any related to nonsevere impairments, and provide reasons for the weight she attributes to them.

The following facts are drawn from the administrative record (AR).

FACTS

A. Background

Plaintiff Kenneth Ross was born on November 26, 1959, making him 54 years old when he applied for benefits on May 20, 2014 and on his last insured date, September 30, 2014. AR 14-16. Plaintiff contends that he became disabled on October 20, 2011. However, he did not receive any medical care until April 3, 2014, when he was hospitalized for a left tibia and fibula fracture after he slipped on a rug in his home. AR 16-17, 19, 36.

In October 2011, plaintiff was laid off from his seasonal employment with Fleming Marine Construction, for which he installed and repaired seawalls. AR 36-37. He has been unemployed since that time but does some work on the property where he lives in exchange for room and board. AR 39, 42-45.

B. Relevant Medical Treatment

On April 18, 2014, orthopedic surgeon Dr. Hugh Bogumill performed surgery on plaintiff for intramedullary rodding of the left tibia. AR 19 (citing AR 287 and 291). Dr. Bogumill continued to treat plaintiff for the next two and a half years.

At a post-surgery followup visit on April 28, 2014, plaintiff reported that he was doing "okay" but had some discomfort around his ankle area. AR 264. He also complained that he has right shoulder pain from a past clavicle fracture while reaching or trying to lift overhead. Dr. Bogumill observed that plaintiff had crepitance (popping or cracking) with shoulder motion and 160 degrees of flexion and abduction. He suspected that plaintiff had rotator cuff impingement but noted that he would evaluate plaintiff further and have x-rays taken after plaintiff was off crutches. AR 265.

2

On May 28, 2014, plaintiff reported that he was having shoulder pain with any reaching and some stiffness and swelling in his foot. However, he stated that he thought he could start walking on his left leg. AR 261. At this visit, Dr. Bogumill diagnosed Dupuyten's contracture (a hand deformity pulling the finger into a bent position) in plaintiff's right ring finger, but noted that the condition was not causing plaintiff any functional problems. Again, Dr. Bogumill stated that he would consider treatment for plaintiff's shoulder and hand after plaintiff was off crutches. AR 262.

On June 27, 2014, plaintiff reported that he had discomfort in his calf and some swelling and was not wearing his brace or putting any weight on his leg. AR 301-02. Dr. Bogumill observed some but not excessive residual swelling in plaintiff's lower leg and foot and tenderness in his fibular shaft. X-rays also showed that plaintiff's fibula fracture showed no signs of healing over past 90 days. Dr. Bogumill stated that he advised plaintiff that fractures in this area are notorious for delayed unions and nonunions because of the watershed nature of the blood flow. He also explained that chronic tobacco use and diabetes delays healing. AR 302.

At Dr. Bogumill's recommendation, plaintiff began physical therapy on September 22, 2014. AR 427-30. Although he had very limited tolerance for weight-bearing activities at that time, his walking ability had progressed by September 29, 2014, when he reported wearing a walking boot while mowing his lawn and using just one crutch on occasion. AR 431. On October 6, 2014 (soon after the expiration of his date last insured), plaintiff reported that his leg was getting better each time he went to therapy and that he had been

walking a lot with two crutches when the weather was good. AR 435. By the middle to end of October 2014, plaintiff reported that although he had ankle and foot pain, he could walk around his home without crutches. AR 320, 461. On November 14, 2014, plaintiff stated that he was able to snowplow his driveway and had been using only one or no crutch for weeks. AR 467. In early December 2014, plaintiff reported being able to tolerate "much more" activity without pain and only using one crutch for long-distance walking or climbing stairs. He was 75 percent weight-bearing on the left side. AR 324, 472, 484, 486. Plaintiff was discharged from therapy on December 29, 2014. At that time he reported that his knee was the most limiting factor for his activity and that he had not been using crutches and could be "pretty active" all day and then be really sore the next day. AR 494. Although plaintiff was rated as having moderate difficulty with his usual activities, squatting and walking one mile, he had no difficulty sitting for one hour and only a little bit of difficulty walking between rooms, performing light activities, walking two blocks and standing for one hour. AR 494-95.

During his appointments with Dr. Bogumill in January and February 2015, plaintiff complained of knee pain that hurt when he walked, knelt or squatted. In February 2015, plaintiff also reported some discomfort in his shoulder that became worse with reaching overhead. Dr. Bogumill noted that plaintiff's surgical repair was healing well and recommended that he should continue exercising and walking and be off pain medication. He ordered a magnetic resonance imaging study of plaintiff's left knee, which showed some degenerative changes but no definite tear. Dr. Bogumill concluded that plaintiff's tibia and

4

fibula were healed and that his knee pain was tendinosis that could be treated with a cortisone injection and should improve with increased activity. He planned to observe plaintiff's shoulder and Dupuytren's contracture. AR 327-31.

On October 22, 2015, a physician's assistant noted that plaintiff could walk two flights of stairs and four city blocks at a normal rate, and on examination, he had a normal gait and no musculoskeletal complaints. AR 332-33. Although Dr. Bogumill performed hand surgery on plaintiff in November 2015 to release his Dupuytren's contracture and continued to treat plaintiff's hand for a few months, there are no further treatment records concerning plaintiff's shoulder, knee or leg. AR 333-54, 519-83.

### C. Dr. Bogumill's Opinions

1. August 7, 2014 physical capacities evaluation

Dr. Bogumill diagnosed a left distal tibial proximal fibula fracture with calf, ankle and foot pain, stiffness, knee and ankle swelling and inability to bear weight without pain. AR 306. Plaintiff's left leg fracture required him to use a fracture boot on the left leg and crutches to move about. Dr. Bogumill assessed the following limitations:

- plaintiff's symptoms "often" would be severe enough to interfere with the attention and concentration needed to perform simple work-related tasks;

- sitting for eight hours, standing for one hour and not walking at all during an eight-hour day;

- change positions every hour;

- unscheduled breaks as often as every hour during an eight-hour workday to elevate his legs to decrease swelling;

5

- no lifting, carrying, squatting, kneeling, crawling, climbing, using a ladder, working on uneven surfaces, unprotected heights or being around moving machinery;

- occasional bending or reaching above shoulder level;

- a moderate restriction in driving automotive equipment; and

- a mild restriction of activities involving exposure to marked changes in temperature and humidity, dust, fumes and gases.

AR 306-09.

2. September 4, 2014 physical capacities evaluation

Dr. Bogumill noted that plaintiff had left leg pain and swelling, was unable to walk without crutches and experienced weakness and stiffness in his left knee and ankle. AR 310. He assessed the following limitations, which were more restrictive than those he had assessed the previous month and included additional limitations related to plaintiff's shoulder and hand problems:

- plaintiff's symptoms "constantly" would be severe enough to interfere with the attention and concentration needed to perform simple work-related tasks;

- simple work-related tasks because of symptoms and side effects of his medications, including drowsiness, decreased concentration and altered reflex time;

- sitting for two hours and no walking or standing in an eight-hour workday;

- elevating his left leg while sitting to control swelling and pain;

- changing from a sitting position and reposition left leg elevation every half hour;

- limited repetitive reaching, handling and fingering;

- simple grasping and fine manipulation with the right hand for 25 percent of the day;

- total restrictions on the following: pushing, pulling, foot controls and repetitive movements with the left foot, lifting, carrying, squatting, crawling, climbing, reaching or working with right arm away from side, reaching above chest height or shoulder level, using stairs or ladders, unprotected heights, uneven surfaces, moving machinery and exposure to marked changes in temperature and humidity;

- occasional bending; and

- moderate restriction in driving automotive equipment.

AR 310-13.

Dr. Bogumill stated that the above limitations had been in effect since plaintiff's leg injury in April 2014, and that the August 2014 report considered only plaintiff's leg injury and not all of plaintiff's "problems." AR 313. Dr. Bogumill also stated that plaintiff was "100% disabled" from working as a carpenter. Id.

3. February 13, 2017 statement

Three years after he had treated plaintiff, Dr. Bogumill completed a form entitled "treating source statement," in which he identified the following limitations for plaintiff:

- plaintiff's symptoms would likely be severe enough to interfere with attention and concentration needed to perform even simple work-related tasks for 25% of the workday and would likely cause him to be absent from work 4 or more days per month;

7

- lift and carry 10 pounds occasionally, 20 pounds rarely, no amount of weight frequently and never lift or carry more than 50 pounds;

- stand two hours, walk one hour and sit eight hours in an eight-hour workday with the option to sit and stand at will;

- use of a cane or other assistive device to ambulate effectively and could walk only 10 feet without the cane;

- no work around unprotected heights, climbing ladders and scaffolds, kneeling, crouching, crawling or reaching overhead with right arm and hand;

- rarely push and pull with right arm and hand, use left foot to operate foot controls, climb stairs and ramps, balance, reach in all directions with right arm and hand and work around extreme cold;

- occasional stooping, rotating head and neck, reaching with left arm and hand and working around moving mechanical parts and extreme heat;

- frequent use right foot for foot controls, operation of vehicle and work around vibrations and handling, fingering, feeling, pushing and pulling with both arms and hands; and

- continuous work around humidity, wetness, dust, odors, fumes and pulmonary irritants.

AR 362-65.

Dr. Bogumill stated that plaintiff's "previous" scan (presumably from 2014) showed incomplete healing of his fracture and a magnetic resonance imaging study of his knee (presumably from January 2015) showed chronic patella tendonitis. AR 364. He also noted that plaintiff had weakness and limited range of motion and strength in his left knee and ankle and his right shoulder and wrist. AR 364-65.

B. Administrative Hearing

8

On February 28, 2017, Administrative Law Judge Diane Davis held an administrative hearing at which plaintiff and a vocational expert testified. AR 31. Plaintiff testified that his knee never really healed but he had not gotten a cortisone injection or other treatment for it. He also testified that he never sought treatment for his right shoulder. AR 39-40. Plaintiff stated that his left leg is weak and still hurts. If he is on his feet more than three or four hours a day, it stays sore for a day or two. Sometimes he can walk up and down stairs but other times he favors his leg. He feels most sore when he walks or is on his feet four or five hours a day. AR 40-41.

Plaintiff testified that he goes boating twice a month, goes fishing and can drive for up to four hours at a time if he stretched for a bit. AR 41-42, 47-48. On the property where he lives, he mows the grass (of which there is a lot) with a riding mower once a week and does handyman, yard and snow removal work about three to four hours a day, three days a week. AR 41-45.

C. Administrative Decision

The administrative law judge issued a written decision on May 2, 2017, finding that plaintiff was severely impaired by a fracture of the left tibia and fibula. She found that his osteoarthritis of the right shoulder and DuPuyten's contracture of the right finger were "nonsevere." AR 17. She found also that plaintiff retained the residual functional capacity to perform light work limited by occasional kneeling, crouching, crawling and climbing and avoiding concentrated exposure to unprotected heights. AR 18. In reaching this

9

decision, the administrative law judge gave little weight to the state agency physicians, who stated that plaintiff was capable of medium level work with manipulative limitations, because she believed that plaintiff had more restrictive limitations resulting from residual pain and soreness from his leg fractures. AR 20. The administrative law judge also gave little weight to the opinions of Dr. Bogumill for the following stated reasons:

- The August 7, 2014 opinion limiting plaintiff to sedentary work with postural limitations was made only four months after plaintiff's surgery. Further, Dr. Bogumill specifically noted that plaintiff's fractures would take a while to heal given their location and plaintiff's tobacco use. AR 20 (citing AR 302).

- The September 2014 opinion addressed only plaintiff's past work as a carpenter and did not make a finding of 100 percent disability for all work. AR 20.

- The February 13, 2017 opinion was issued well after plaintiff's date last insured and assessed limitations related to plaintiff's upper extremity impairments, which the administrative law judge found "not severe through the date last insured" and "not supported by the record." AR 20-21.

- Plaintiff's daily activities and hobbies undermine his alleged disabling symptoms, including boating twice a month, fishing and handyman work around the property where he lives (snow removal, lawn mowing and other jobs). AR 21.

- The medical record and plaintiff's treatment regimen showed that plaintiff was able to sustain greater capacity than Dr. Bogumill's limitations suggest. Id.

The administrative law judge found that plaintiff could not perform his past work as a carpenter and construction worker. AR 21. She also noted that because plaintiff was 54 years old (or an individual "closely approaching advanced age") on his last insured date, the Medical Vocational Guidelines supported a finding of "not disabled" and did not require a

determination whether plaintiff has transferable job skills.  Id.  Relying on the testimony of a vocational expert who testified in response to a hypothetical question based on plaintiff's residual functional capacity assessment, the administrative law judge found that jobs existed in significant numbers in the national economy that plaintiff could perform, including cashier II, cleaner or housekeeper and photocopy machine operator.  AR 22.

OPINION

In reviewing an administrative law judge's decision, I must determine whether the decision is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted).  This deferential standard of review

> does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision.  Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination.

Id.  See also Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009) (administrative law judge need not discuss every piece of evidence but "must build a logical bridge from evidence to conclusion"); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Plaintiff contends that the administrative law judge erred in two respects:  (1) not providing adequate reasons for rejecting the opinions of his treating physician; and (2) failing to properly consider his age category as borderline in applying the Medical Vocational

11

Guidelines. Because I find plaintiff's arguments regarding his borderline age category to be dispositive, I will address that issue first and then address the administrative law judge's analysis of the treating physician opinions.

A. <u>Borderline Age Category</u>

The agency classifies claimants who are 50 to 54 years old as individuals "closely approaching advanced age" and claimants who are 55 years old and older as individuals "of advanced age." 20 C.F.R. § 404, Subpt. P, App. 2. The distinction is important. For a claimant with a light work residual functional capacity in the "advanced age" category, the Medical-Vocational Guidelines direct a finding of "disabled" if the claimant does not have transferable skills. Rule 202.02. 20 C.F.R. § 404, Subpt. P, App. 2, Rule 202.02. In this case, the administrative law judge determined that it was unnecessary to determine whether plaintiff had transferrable skills because he was only 54 years old on his last insured date. Although the administrative law judge is technically correct, plaintiff criticizes her for mechanically applying the age classifications in his case when he was only two months shy of his 55th birthday on his last insured date.

In support of his argument, plaintiff cites 20 C.F.R. § 404.1563(b), which specifies that age categories will not be applied mechanically in "borderline situations" when a claimant is within a few days or a few months of a higher age category that would require a finding of disability. <u>Heckler v. Campbell</u>, 461 U.S. 458, 462 n.5 (1983). Section 404.1563(b) further states that "we will consider whether to use the older age category after

12

evaluating the overall impact of all the factors of your case." In addition, although neither has been found to be legally binding in this circuit, the agency's Program Operations Manual System (POMS) DI 25015.006(E) and Hearing, Appeals and Litigation Law Manual (HALLEX) HALLEX I-2-2-42 identify the following factors as relevant to determining whether the claimant has additional "vocational adversities": (1) how close the claimant is to the next higher age category; (2) whether the claimant has a limited education (11th grade or less); (3) whether the claimant's past work was many years ago or was limited to an isolated industry such as forestry, fishing or mining; and (4) whether the claimant has residual functional capacity limitations that adversely affect, but do not significantly erode, his occupational base. POMS DI 25015.006(G) and HALLEX I-2-2-42(C)(5) also specifically instruct administrative law judges to explain how they considered a claimant's borderline age and note any factors that they considered. (Although the Commissioner argues that HALLEX II-5-3-2 requires the claimant to plead harm in challenging an administrative law judge's failure to discuss a borderline age situation, that section of the manual was removed on March 25, 2016 and replaced with HALLEX I-2-2-42, so it is not applicable to the 2017 administrative decision in this case.)

The Court of Appeals for the Seventh Circuit has not discussed borderline age situations in any detail or identified what duty an administrative law judge has to articulate her consideration of an older age category. Other federal circuit courts have reached differing conclusions with respect to the issue, but most have stated that some discussion or recognition of a borderline age situation is warranted to insure that the administrative

13

decision is supported by substantial evidence. Phillips v. Astrue, 671 F.3d 699, 704-06 (8th Cir. 2012) (reviewing case law and concluding that although detailed findings are not necessary, there must be some showing that application of higher age category was considered, particularly in cases in which there is additional evidence of vocational adversity); Lockwood v. Commissioner of Social Security, 616 F.3d 1068 (9th Cir. 2010) (administrative law judge satisfied requirement to consider older age category as shown by mention of claimant's date of birth, age category and citation to § 404.1563); Bowie v. Commissioner of Social Security, 539 F.3d 395, 399-401 (6th Cir. 2008) (Section § 1563(b) "does not impose on ALJs a per se procedural requirement to address borderline age categorization in every borderline case," but "lack of an explanation may . . . mean that the ALJ's ultimate decision is not supported by sufficient evidence," particularly if there are additional vocational adversities); Daniels v. Apfel, 154 F.3d 1129, 1136 (10th Cir. 1998) (remanding for further consideration of age category because "[l]ike any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence"); Kane v. Heckler, 776 F.2d 1130 (3d Cir. 1985) (remanding for consideration of age category in borderline situation because administrative law judge failed to address § 404.1563). Further, district courts in this circuit generally require some explanation of the administrative law judge's thought process with respect to applying an age category in a borderline case. E.g., Figueroa v. Astrue, 848 F. Supp. 2d 894, 900 (N.D. Ill. 2012) ("[W]ithout some minimal explanation of how a choice has been made, it would seem difficult if not impossible for there to be meaningful review of the age category

14

determination."); Young v. Barnhart, 287 F. Supp. 2d 905, (N.D. Ill. 2003); McKay v. Colvin, 2016 WL 6432582, at *5 (N.D. Ill. Oct. 31, 2016); Pelech v. Colvin, 2016 WL 727208, at *7 (N.D. Ill. Feb. 22, 2016); Anderson v. Astrue, 2011 WL 2416265, at *11 (N.D. Ill. June 13, 2011).

As plaintiff points out, the administrative law judge in this case failed to mention plaintiff's borderline age situation, cite the applicable regulation or analyze any of the relevant factors. In addition, there is at least some evidence of vocational adversity in this case because plaintiff has a limited education (10th grade) and had not worked since October 2011. AR 21, 203. Although the Commissioner points out that plaintiff has a commercial driver's license, she has not cited any authority to support her contention that such a skill means that plaintiff does not have "limited education" as that term is used in § 404.1563(b).

Accordingly, I cannot conclude that the administrative law judge committed harmless error in failing to consider whether the "advanced age" category should apply to plaintiff and am remanding this case for further consideration of plaintiff's borderline age situation. On remand, the administrative law judge should take care to follow agency regulations and guidance addressing this issue, explain how she applied the chosen age category and discuss the specific factor(s) she considered.

B. Dr. Bogumill's Opinions

Under the law applicable at the time of plaintiff's hearing, treating physician opinions are entitled to controlling weight if they are supported by objective medical evidence and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013). Although an administrative law judge is not required to give a treating physician's opinion controlling weight, he is required to provide a sound explanation for rejecting it. Id.; Hall ex re. Hall v. Astrue, 489 Fed. Appx. 956, 958 (7th Cir. 2012) ("An ALJ can give less weight to a doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight."). Further, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009) (citing "checklist" of factors in 20 C.F.R. § 404.1527).

Plaintiff contends that the administrative law judge gave insufficient reasons for giving little weight to Dr. Bogumill's three opinions and failed to consider the checklist factors. He points out that many of the limitations Dr. Bogumill assessed—especially those related to standing and walking—would have resulted in no more than a limited, sedentary residual functional capacity assessment, which would have precluded him from working.

As an initial matter, I note that although an administrative law judge is supposed to consider all of the factors in 20 C.F.R. § 404.1527(c), she does not need to discuss each one

expressly in her opinion, so long as she otherwise explains why the treating physician opinion is inconsistent with the record. Elder v. Astrue, 529 F.3d 408, 416 (7th Cir. 2008) (administrative law judge need only "minimally articulate" her reasons for crediting or rejecting treating physician opinion); Schreiber v. Colvin, 519 Fed. Appx. 951, 959 (7th Cir. 2013) (rejecting claimant's argument that administrative law judge erred by not specifically addressing each factor); Henke v. Astrue, 498 Fed. Appx. 636, 640 n. 3 (7th Cir. 2012) ("The ALJ did not explicitly weigh every factor [in 20 C.F.R. § 404.1527] while discussing her decision to reject [the treating physician's] reports, but she did note the lack of medical evidence supporting [the treating physician's] opinion . . . and its inconsistency with the rest of the record. . . .This is enough"). In this case, it is clear from the administrative law judge's written opinion that she was aware of and considered Dr. Bogumill's past treatment of plaintiff, his speciality, the tests he performed and whether his observations were consistent with the medical evidence and plaintiff's activities. Schreiber, 519 Fed. Appx. at 959 (noting same).

The administrative law judge found Dr. Bogumill's August 2014 opinion unhelpful because it was issued only four months after plaintiff's surgery, from which he was recovering slowly. Plaintiff says little to challenge this rationale, stating only that the administrative law judge failed to provide any "legal basis" for relying on plaintiff's tobacco use as a reason for rejecting the limitations assessed by Dr. Bogumill. Although the administrative law judge "must not succumb to the temptation to play doctor and make their own independent medical findings," Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996), she did not make an

17

impermissible assumption about plaintiff's tobacco use that was not based on substantial evidence in the record. Rather, the administrative law judge repeated Dr. Bogumill's statement that plaintiff's chronic tobacco use was likely a factor in plaintiff's delayed healing.

The administrative law judge's analysis of Dr. Bogumill's September 2014 opinion is more problematic. Although she was correct in noting that Dr. Bogumill had stated that plaintiff was 100 percent disabled from work as a carpenter, she failed to acknowledge that Dr. Bogumill assessed numerous detailed limitations related to plaintiff's overall ability to perform work activity, including limitations related to plaintiff's nonsevere hand and shoulder conditions. 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to" severity.); Williams v. Colvin, 757 F.3d 610, 613 (7th Cir. 2014) ("[T]he combined effects of the applicant's impairments must be considered, including impairments that considered one by one are not disabling."). Contrary to defendant's contention, plaintiff had complained about shoulder pain with reaching at several appointments between April 2014 and February 2015. However, the administrative law judge accurately summarized the entire medical record and reasonably concluded that plaintiff did not remain as limited as Dr. Bogumill claimed in September 2014. She reasonably found that plaintiff's leg fractures had fully healed and that his strength, pain and ability to bear weight progressively improved by February 2015 (or 10 months after the date of his injury), when Dr. Bogumill released him from care. Although plaintiff testified that his left leg was weak and hurt and that he continued to have problems with his knee and

shoulder, he did not receive any treatment for or assessment of those conditions after February 2015.  There also is evidence in the record that plaintiff was able to climb stairs, walk and be on his feet for up to several hours a day.  Finally, the administrative law judge explained why she did not credit plaintiff's subjective symptoms, and plaintiff has not challenged this finding.

Although Dr. Bogumill issued similar restrictions for plaintiff in February 2017, the administrative law judge reasonably determined that they were not relevant because the opinion post-dated the last insured period by over two years.  In addition, Dr. Bogumill had not treated plaintiff recently and relied on scans and tests performed a few years earlier.

In sum, I am not convinced that the administrative law judge's analysis of Dr. Bogumill's opinions provides a basis for remand in this case.  However, because I am remanding the case on other grounds, the administrative law judge should take care to consider all of the limitations assessed by plaintiff's treating physician, including any related to plaintiff's nonsevere impairments, and support her findings with substantial evidence.


ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying plaintiff Kenneth Alexander Ross's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. §

405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 9th day of May, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge